(No. 36189.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CONRAD J. STRADER, JR., Plaintiff in Error.

*Opinion filed September 22, 1961.*

ALICE GOULD, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Hershey delivered the opinion of the court:

Defendant was convicted of murder in a trial before the court without a jury and was sentenced to the penitentiary for a term of 50 years. We have issued a writ of error, and the cause is before us for review.

On this writ of error, the defendant makes several contentions, among them that the court erred in receiving in evidence a written confession without a preliminary hearing as to its voluntariness and made other allegedly prejudicial errors in the admission and exclusion of evidence, that the evidence is insufficient to sustain the conviction, and that defendant was deprived of a fair trial because of the incompetence of his trial counsel.

A concise summary of the evidence is made difficult by the fact that the record contains three somewhat varying accounts of the occurrence made by the defendant at different times. However, it appears that the defendant, who had been drinking, was, in the early hours of the morning of July 6, 1957, driving his automobile on 48th Street, in the city of Chicago, in company with one George Edwards, when he noticed a man driving the wrong way on the one-way street. He called to the man that he was going the wrong way, and the man made a cursing retort. Defendant "saw red," turned his car around and pursued the other vehicle, which turned off at the next cross street. Two witnesses for the People testified that defendant forced the other car to the curb. Defendant's testimony was that he did not recall curbing the other car. In any event, both cars stopped, and defendant and Edwards got out of defendant's car and went over to the other car, defendant taking with him a gun which had been in the ash tray of his car. In the altercation that ensued, the driver of the other car was fatally killed by a bullet fired from defendant's gun while the gun was in defendant's hand. Certain

variations in the different versions of the occurrence will be pointed out later in this opinion.

John Higgins, one of the arresting officers, testified that he first saw the defendant about 5 :00 p.m. on July 11, 1957, and told the defendant that he was a suspect in the shooting, because a Studebaker automobile, bearing a license number, the first four digits of which were 2571, was seen driving away from the scene of the shooting and such a car was registered in defendant's name. Defendant appeared nervous and agitated and denied any connection with the shooting. When asked, he said he would be willing to take a polygraph test at the crime laboratory. The officers waited while the defendant put on a shirt and then took him to the detective bureau. On the way there, the defendant again denied any connection with the shooting. At the bureau, however, defendant said he wanted to relieve his conscience and made an oral statement confessing to the shooting.

According to the testimony of Higgins, the defendant related his pursuit of the other car substantially as set forth above and stated that, when he and Edwards got out of the car, he walked up to the driver of the other car and Edwards walked around to the other car. The defendant then stated that the next thing he knew was that he was taking the gun from his left pocket and somebody said, "This is it," and that thereupon he fired the gun twice. According to Higgins, Strader then related that he and Edwards drove to Strader's apartment, got two cameras, walked back to the scene of the shooting and attempted to take a picture, but the flash equipment failed. Thereafter they mingled in the crowd to see what they could hear about the shooting. After that Strader said he went home and Edwards went on his way. Strader left the next day for St. Paul, Minnesota, and did not return to Chicago until the morning of July 11, the day he was arrested.

All of the foregoing testimony of officer Higgins as to the oral statement made by the defendant was admitted

in evidence without objection. This oral statement was made at approximately 6:00 P.M. Several hours later, at approximately 10:30 P.M., the defendant gave a written statement. This written statement was not merely a reduction to writing of the previous statement, but was an entirely different statement, which differed in a number of significant respects from the previous oral statement. When the People offered this written statement in evidence, counsel for the defendant objected on the ground "that it hasn't been shown that the statement was voluntarily made." The court overruled the objection and admitted the statement.

After announcing his ruling and receiving the written statement in evidence, the trial judge indicated that the question should have been raised on a motion to suppress. Defendant's counsel disputed this and made a motion for a preliminary hearing. The trial judge overruled this motion, reiterating his view that there should have been a motion to suppress.

The statute authorizing the suppression of improperly obtained confessions reads: "A defendant in a criminal case may raise questions concerning the competency of an alleged confession from him by a preliminary motion, and if the court finds the alleged confession incompetent he shall so rule and shall suppress it at that time. Alleged confessions suppressed pursuant to this Section may not be offered or received into evidence upon the trial of the case. *Failure to make a preliminary motion as provided in this Section or a ruling adverse to the defendant upon such motion shall not prejudice the defendant's right to show incompetency of an alleged confession at the time it is offered into evidence.*" Ill. Rev. Stat. 1957, chap. 38, par. 736.1. (Emphasis supplied.)

From the italicized portion of the foregoing section it is apparent that the trial judge was confused and was mistaken in his notion that the competency of a confession can be questioned only on a motion to suppress. The language

of the statute does, however, suggest the possibility that the legislature may have intended to dispense with the requirement that the People assume the burden of going forward with the evidence on the issue of voluntariness and shift that burden to the defendant who claims that a confession was involuntary. Under such an interpretation, it could plausibly be argued that the objection to the admission of the confession on the ground that it had not been shown to have been voluntarily made was technically insufficient. The People, without, however, relying upon the statutory language, have asked us to change the rule requiring the prosecution to put on a *prima facie* case of voluntariness before the defendant is required to submit any evidence on the issue. In view of the fact that the question of the proper interpretation of the statute in this regard has not been argued and in view of the confused basis of the trial court's ruling, we do not deem this an appropriate case for a decision on this point and we rest our decision on other grounds.

The written statement does not differ significantly from the oral statement in so far as the events leading up to the shooting are concerned. The principal difference between the two statements is that in the written statement the defendant said that he took his gun out of his pocket only after the deceased had reached into his own pocket, and there is an intimation, although no direct statement, that the deceased had said that he had a gun. Thus, while the oral confession contained nothing suggesting any justification for the shooting, the written statement contains at least a suggestion of the claim that the shooting was in self-defense. Thus the question could be raised whether the written statement should properly be regarded as a confession or merely an admission or exculpatory statement to which it has sometimes been held the rules of evidence governing the admissibility of confessions are inapplicable. (*People* v. *Stanton,* 16 Ill.2d 459; but see *People* v. *Hiller,*

2 Ill.2d 323.) Indeed defendant's trial counsel in arguing against the sufficiency of the evidence insisted that the written statement was not a confession. We find it, however, unnecessary to decide this question, for we have concluded on the basis of the entire record that, even if the trial court committed technical error in receiving the statement in evidence without a preliminary hearing, such error was not prejudicial.

There are two reasons why we conclude that any error in the admission of the written statement did not prejudice the defendant. The first is that the unquestionably competent evidence in the record which was admitted without objection was sufficient to prove the defendant's guilt beyond a reasonable doubt. The second is that, although defendant was denied a preliminary hearing on the question of the voluntary nature of his written statement, he subsequently took the stand in his own behalf, at which time he presumably presented whatever evidence he had that the statement was involuntary, and his own testimony completely fails to show that the statement was anything but voluntary.

Defendant's oral confession, as testified to by officer Higgins, was received in evidence without objection. This oral statement was a complete and sufficient admission of the shooting without anything suggesting any valid defense. Thus the oral confession, standing alone, would be sufficient evidence to support the conviction. Defendant in his argument appears to assume that, if the written statement is incompetent, the oral statement is also incompetent. In support of this contention, he cites *People* v. *Dale,* 20 Ill.2d 532. In the *Dale case* we held that there was really only one confession, which was made first orally and then immediately reduced to writing, and that the objection to the written confession properly raised the issue of whether the confession was voluntary. Here there is not a single confession, but two entirely separate statements, made several

hours apart, and differing from each other in several particulars. Thus the situation is not analogous to that presented in the *Dale case*. Here the oral confession was not objected to and was properly in evidence. Even without the written statement, the evidence in the record which was admitted without objection is sufficient to sustain the conviction.

A second reason for our conclusion that any error on the part of the trial court in admitting the written statement without a preliminary hearing was not prejudicial is that the defendant's own testimony concerning the circumstances under which the statement was made indicates that the statement was voluntary. Defendant took the stand in his own behalf, at which time, among other things, he related the circumstances of his questioning at the detective bureau. He made no claim that he was in any way abused or threatened or made any promises of any kind. He said only that he had not had any sleep for several days, and that the police gave him a cup of coffee to keep him awake. His lack of sleep was something for which he himself was responsible and for which the police cannot be charged. There is a complete lack of anything indicating that his statement was other than voluntary. Nowhere does defendant actually assert that his statement was involuntary, his only complaint is that he was denied a preliminary hearing. In view of his failure, when he did take the stand, to produce any evidence whatsoever to show that the statement was involuntary, it is apparent that a preliminary hearing in this case would have been completely unavailing and that defendant was not prejudiced by the admission of the statement.

Defendant contends that the evidence upon which the conviction is based is of an unsatisfactory character and is insufficient to prove his guilt beyond a reasonable doubt. There can be no question from the record that defendant shot and killed the deceased. Therefore his claim that he

was not proved guilty beyond a reasonable doubt rests upon certain facts alleged in his testimony which he contends either excuse his act or make it something other than murder. In this regard, he contends, first, that he was so intoxicated at the time of the shooting that he cannot be found guilty of murder. There is no contention that his alleged intoxication was not voluntary, and his own evidence clearly indicates that it was voluntary.

Voluntary drunkenness is not a defense to the commission of crime. (*People* v. *Jones*, 263 Ill. 564.) However, where malice is a necessary element of the crime, and where the intoxication is so extreme as to suspend the power of reason and the accused is incapable of forming an intent, he cannot be held guilty of the crime. There is nothing in the record to sustain defendant's contention that his intoxication was so extreme as to make him incapable of having the intent necessary in a case of murder. Defendant's testimony in regard to his intoxication proves too much, since he was in sufficient possession of his faculties to enable him to remember, in minute detail, all of the bars he visited and the nature and quantity of the various beverages he consumed in each. Moreover, he also recalls in detail the circumstances of his pursuit of the deceased and practically all of the details surrounding the shooting. The record does not support the contention that his intoxication prevented him from possessing in his mind the necessary intent for the crime charged, nor is his evidence in this regard sufficient to reduce the charge from murder to manslaughter. The defendant at all times knew what he was doing.

Defendant's next contention is that he was not proved guilty beyond a reasonable doubt because, as he says, citing *People* v. *Motuzas*, 352 Ill. 340, one may kill intentionally in self-defense and not be guilty of murder. According to defendant's oral statement to officer Higgins, after relating how he and his companion got out of his car and ap-

proached the car of the deceased, the next thing he knew was that he was taking his gun out of his pocket, someone said "This is it," and there were two shots fired from the gun. All that *People* v. *Motuzas*, 352 Ill. 340, holds is that, under the law of self-defense, one who is deliberately assaulted in a manner to make him reasonably apprehensive of death or great bodily harm has the right to kill his assailant, if it reasonably appears to him that such action is necessary in order to save himself from death or great bodily harm. There is nothing in the oral confession that remotely suggests such a situation.

In his testimony at the trial, defendant stated that just before the shooting the deceased "reached in his pocket as if to come at me." The trial judge was, of course, not obliged to accept this version of the story in preference to that related in the oral confession. However, defendant's testimony fails to make out a proper case of self-defense. The evidence is undisputed that the defendant was the aggressor, that he pursued the deceased, and that, together with his companion, Edwards, defendant got out of his car and went over to the deceased's car, taking his gun with him. There is no evidence that the deceased was armed or made any threats or that the defendant was reasonably placed in fear of death or great bodily harm. This court has held that when a defendant brings on a difficulty between the deceased and himself at the time of the killing, and the defendant was the first assailant, he cannot avail himself of the right of self-defense, however imminent the danger in which he finds himself, unless he, in good faith, endeavored to decline further struggle before the shot was fired. (*Henry* v. *People,* 198 Ill. 162; *Kinney* v. *People,* 108 Ill. 519.) We find no justification in the law of self-defense for the defendant's claim.

Defendant further contends that the trial court erred in permitting the assistant State's Attorney to ask leading questions. Three instances are called to our attention. In

each case, the objection to the form of the question was made not by defendant but by his codefendant. In any event, these questions all dealt with matters concerning which there is no dispute in the evidence and could not possibly have resulted in prejudice to the defendant.

Defendant next claims that the trial court unduly restricted the cross-examination. The instances cited in defendant's argument relate not to the cross-examination conducted by his counsel but by counsel for another defendant. We have, however, examined the record, and find no prejudicial error in this respect.

Defendant also urges that the trial court erred in exempting officer Higgins from the order excluding witnesses from the court room. A defendant has no absolute right to have all the witnesses excluded. (*People* v. *Reed,* 333 Ill. 397.) The exclusion of witnesses is within the sound discretion of the court, and no error can be assigned when the court fails to do so in the absence of a showing by the defendant that he was prejudiced. (*People* v. *Winchester,* 352 Ill. 237.) Here there was no showing of prejudice, and, therefore, no reversible error was committed.

The last assignment of error is that defendant was deprived of a fair trial because of the incompetence of his trial counsel. It appears that the counsel was of defendant's own choosing. We have held, in cases where a defendant was represented by counsel of his own choosing, that a conviction will not be reversed for poor representation unless it can be said from the record that the representation was of such low caliber as to amount to no representation at all, or that it was such as to reduce the trial to a farce. (*People* v. *Clark,* 9 Ill.2d 46; *People* v. *Stephens,* 6 Ill.2d 257.) The present record presents no such picture.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*