# Staunton

HUBERT HOFFLER V. C. C. PEYTON, SUPERINTENDENT OF THE
VIRGINIA STATE PENITENTIARY.

RUBEN PIERCE V. C. C. PEYTON, SUPERINTENDENT OF THE
VIRGINIA STATE PENITENTIARY.

September 9, 1966.

Record Nos. 6205, 6206.

Present, All the Justices.

R. R. *Ryder* and *Ronald P. Sokol,* for plaintiff in error, Hubert Hoffler. Submitted on brief.

R. R. *Ryder* (*Ronald P. Sokol,* on brief), for plaintiff in error, Ruben Pierce.

*Reno S. Harp, III, Assistant Attorney General* (*Robert Y. Button, Attorney General; James Parker Jones, Assistant Attorney General,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Hubert Hoffler and Ruben Pierce filed petitions for writs of habeas corpus, claiming that their judgments of conviction of robbery in the Circuit Court of the city of Suffolk on April 15, 1963 were void because of ineffective representation by counsel. The cases were heard together and writs were denied. We granted a writ of error in each case and they are before us on a single printed record.

In a profession of neglect and mismanagement in the preparation for and trial of the criminal cases, unique in the administration of justice in this State, counsel who represented the defendants in those cases in effect join with them in the habeas corpus proceedings and ask that because of their delinquencies the judgments of conviction be vacated. After hearing the evidence presented in the habeas corpus proceedings, including the testimony of the three attorneys involved, the trial court held that their delinquencies did not constitute a denial of the effective assistance of counsel guaranteed to the petitioners under the State and Federal Constitutions. We agree with that holding.

The substance of the respective assignments of error is that (1) the finding of the trial court that the petitioners were not denied their right to the effective assistance of counsel is contrary to the law and the evidence, and (2) the petitioners were denied their

right to a jury trial guaranteed to them by the provisions of the State and Federal Constitutions.

The factual background of the case is this: In January, 1962, Hoffler and Pierce were arrested on warrants charging them with the larceny of a truck from Joseph Jordan in Nansemond county. Robert J. Parr, an attorney practicing in Suffolk, was employed to represent them. In a hearing on February 9 that warrant was dismissed.

At the March, 1962 term of the Circuit Court of the city of Suffolk, Hoffler and Pierce were indicted separately for robbery in taking the ignition key to the truck from Jordan by putting him in fear by means of a loaded pistol. Code, § 18.1-91 [Repl. Vol. 1960]. To defend them on the charges preferred in the indictments they employed Parr, who had represented them on the larceny charge, Thomas L. Woodward, a member of the Suffolk bar, and Major M. Hillard, Jr., a member of the bar of the city of Chesapeake. Parr had represented them at the preliminary hearing on the charge of robbery which preceded their indictment.

On April 15, 1963, after several continuances, the defendants appeared in court with their three attorneys, pleaded not guilty to the indictments, waived trial by a jury, and by agreement were tried together by the court. After hearing the evidence the trial court found each guilty of robbery and fixed his punishment at five years in the penitentiary and each was sentenced accordingly. We affirmed the judgment in each case. *Pierce* v. *Commonwealth*, 205 Va. 528, 138 S. E. 2d 28.

Shortly thereafter, through other employed counsel, the defendants filed separate petitions for writs of habeas corpus attacking the validity of their judgments of conviction.

The evidence presented on the robbery charge is related in the former opinion [205 Va. 528, 138 S. E. 2d 28] and need not be repeated. Suffice it to say here, that this charge grew out of a quarrel which took place on January 13, 1962, in the city of Suffolk, over the sale of a truck by Jordan to Pierce and the refusal of Jordan to deliver the vehicle. The evidence on behalf of the Commonwealth showed that during the quarrel Hoffler intervened in behalf of Pierce, struck Jordan on the head with a pistol, and forced him to give the keys to the vehicle to Pierce. Pierce and Hoffler then drove the truck away.

The evidence on behalf of the defendants was that they had no

intent to steal the truck; that Pierce had purchased it from Jordan for $150 and had paid $115 on account thereof; that when Pierce went to get the vehicle Jordan refused to deliver it and refused to refund the amount paid; and that when Hoffler intervened Jordan threatened him with a knife. In self-defense, Hoffler said, he struck Jordan with the pistol. Hoffler contended that if he was guilty of any offense at all it was only assault and battery. On review we held that upon this conflicting evidence the trial court, sitting as a jury, was warranted in finding the defendants guilty of robbery.

The evidence presented at the habeas corpus proceedings may be summarized thus: Hillard testified that he was admitted to the bar in 1949, and had had considerable experience in trying criminal cases. He was employed by Hoffler about February 1, 1962, which was after the preliminary hearing but before the indictments had been found against the defendants. Shortly after his employment he went to Suffolk and talked to Moody Stallings, the Commonwealth's attorney, about entering a plea of guilty to a charge of assault and battery against Hoffler and Pierce. Hillard testified that during this discussion Stallings said "Well, that sounds like to me it's just an argument between two bootleggers." According to Hillard, on the day of the trial and about ten or twenty minutes before it commenced, he and Woodward discussed with Stallings about the entry of a plea of guilty to a charge of assault and battery by the defendants, and that Stallings replied that he "didn't know what to do with it," that it "[d]on't amount to anything," but suggested, "Let's come on here and try it and get it off my docket."

On cross-examination Hillard admitted that Stallings never definitely agreed to reduce the charge to assault and battery, but said that such was his (Hillard's) "impression" from his conversation with Stallings, and that he conveyed this impression to Parr and Woodward. He further said that he remained under the same impression until near the end of the trial when he "sensed" that Stallings was pressing for a conviction on the robbery charge. Because of his conversation with Stallings, he said that he and his associate counsel advised Hoffler to waive a trial by jury.

Hillard further testified that he did not attempt to locate or interview any witnesses for the defense, or have them present at the trial, because he left those details to Woodward and Parr.

Hillard expressed the opinion that the representation which he and his associates afforded to Hoffler and Pierce was "inadequate."

He based this opinion, he said, on the fact that he and his associates "presumed" from his conversation with Stallings that the latter "wasn't going to press for a conviction for armed robbery."

Woodward testified that he was admitted to the bar in 1920 and since then had represented various defendants in numerous criminal prosecutions. It was his recollection that he was employed to represent Hoffler and Pierce about three or four days before the trial. On the day the case was called he was opposed to going ahead with the trial because he did not "think the case was ready for trial" and he himself was not prepared, but that he went ahead "with the understanding that an arrangement had been made between Mr. Stallings and Mr. Hillard to come on around and let's get rid of it," that it "wasn't anything but assault and battery." He further said that he did not interview any of the witnesses, most of whom he understood were in Portsmouth. He summarized his position by saying, "What I actually did was sit in on the trial with the understanding that what Mr. Hillard had led me to believe was the fact." He did not "recall" having advised the defendants to waive a trial by jury. During the trial and afterwards he learned that there were certain witnesses who could have testified to material facts in the case.

Woodward expressed the opinion that the defendants were not adequately represented on the robbery charge, because he said, the offense was "too grave to hazard it in any light-hearted way or with half preparation." He further said that he did not have "any idea" that the attorney for the Commonwealth would ask for a conviction of robbery "until the case was practically over."

After the criminal trial Woodward spoke to Judge James C. Godwin, who had presided, and suggested that the judgments be set aside because of "inadequate preparation." However, no formal motion to that effect was presented to the trial court.

Parr testified that he had been practicing law in Suffolk since 1951. He was employed to represent both Hoffler and Pierce on the charge of larceny of the truck, which he was successful in having dismissed, and on the robbery charge which resulted in the indictments. He attended the preliminary hearing on the robbery charge, and after the indictments had been handed down he turned the defense of the cases over to Hillard and Woodward. Thereafter, he said, he made no further investigation nor interviewed any witnesses.

He further testified that he had informally discussed the case with Stallings on several occasions, and while he had "no such promise" from Stallings, he was under the "impression" from these conversations and the discussions with his associates that the case involved merely "an argument between bootleggers" and no "charge of robbery."

Parr testified that the petition for a writ of error was prepared by Woodward and himself and that there was no assignment of error that the judgments should have been set aside because of lack of preparation.

Hoffler testified that he employed Hillard and Woodward to defend the robbery charge against him and Pierce. On the day of Hillard's employment he and Hillard went to Suffolk to discuss the case with Stallings. While he (Hoffler) was not present at that interview, Hillard reported to him that as the result thereof, "There is nothing to it. * * * We have reduced it to simple assault. Everybody recognizes it for what it is." Later he again discussed the matter with Hillard who assured him that as the result of his (Hillard's) talk with Stallings, "there was nothing to worry about" and that the trial would result in a fine of from $75 to $100.

Hoffler said he told Hillard that he had a number of witnesses who would be helpful at the trial and that Hillard replied that they would not be needed. Thus, he said, upon the advice of Hillard and Woodward he did not have these material witnesses present at the trial. None of his counsel, he said, had talked to any of the witnesses.

Among the witnesses excused was Douglas Coffield who was actually present at the courthouse on the day of the trial but was told by Hillard that he would not be needed. Coffield said that if called he would have testified that some of the negotiations for the purchase of the truck by Pierce and Hoffler from Jordan took place in his (Coffield's) place of business in the city of Chesapeake, and that he saw Pierce give Jordan $115 for a payment on account of the purchase price. He further said that there was a "misunderstanding or disagreement" between them as to the price and some difficulty in Jordan's producing the title to the vehicle.

While each of the employed attorneys undertook to minimize his participation in the preparation and trial of the criminal cases, the printed record which is before us as an original exhibit, shows that each was present and actively participated in the trial. Hillard

made the opening statement and cross-examined one witness. Woodward examined four witnesses, including the defendants, and cross-examined two. Parr and Woodward made the closing arguments. The names of all three appear on the petition for a writ of error and the briefs filed in this court in the criminal cases.

Stallings, the Commonwealth's attorney, testified that prior to the day of the trial Hillard came to his office and discussed the matter of a continuance; that Hillard said to him, "I don't think it's anything but assault and battery," to which he (Stallings) replied, "It might not be," but because of Hoffler's record, "I am going to have to try" the case and "let the court decide."

Again, Stallings testified that on the morning of the trial, in the courtroom, Hillard said, "We will give you a plea of guilty on assault," to which he (Stallings) replied, "Mr. Hillard, with this man's record, we will have to put it on and let the court decide." He denied emphatically that he had told Hillard that the case was "just an argument between two bootleggers," and was "just a case of simple assault." That, he said, was Hillard's statement to him.

The two main contentions of the petitioners are thus stated in their brief:

(1) Petitioners "were denied their constitutional right to the effective assistance of counsel when their retained attorneys concededly did not investigate their case or prepare for trial on the capital offense of robbery because of a misunderstanding they had with the Commonwealth's attorney as to the charge that would be pressed against their clients."

(2) Petitioners "were deprived of their constitutional right to a jury trial when they relied on the advice of their retained counsel that an agreement had been reached with the Commonwealth's attorney that only an assault conviction would be sought by the prosecution and that the robbery indictment against them would be dismissed, and on this basis alone they consented to waive a jury. At trial the prosecuting attorney asked for and got a robbery conviction resulting in a five year sentence. Under these conditions their waiver was not understandingly made."

The principles by which these issues should be determined are well settled.

One who is serving a sentence and seeks relief by habeas corpus on the ground that the negligence and incompetence of the attorney who conducted his defense amounted to a denial of his

right to the assistance of counsel guaranteed under the State and Federal Constitutions has the burden of proving the charge made. *Ex parte Farmer*, 123 W. Va. 304, 14 S. E. 2d 910, 913; *State ex rel. Burkhamer* v. *Adams*, 143 W. Va. 557, 103 S. E. 2d 777, 779, cert. den. 358 U. S. 869, 79 S. Ct. 102, 3 L. ed. 2d 101; 21 Am. Jur. 2d, Criminal Law, § 315, p. 342.

Ordinarily, lack of preparation, mistakes or errors of judgment, improper advice or trial strategy in connection with a case are insufficient to justify setting aside a judgment of conviction. Annotation: 74 A. L. R. 2d, § 4(a), p. 1399 *ff.*; 21 Am. Jur. 2d, Criminal Law, § 315, p. 342.

Among the cases which support this principle is *Penn* v. *Smyth*, 188 Va. 367, 49 S. E. 2d 600. There we held that the failure of counsel employed by the defendant to "exercise a high degree of professional diligence" did not constitute an ineffective representation of counsel or render the trial a nullity; that the "acts of omission and commission by counsel" are merely risks which every litigant must take. 188 Va. at 372, 49 S. E. 2d at 602.

In *United States ex rel. Bloeth* v. *Denno*, 2 Cir., 313 F. 2d 364, 374, it was said that, "Poor tactics of experienced counsel, * * * even with disastrous result, may hardly be considered lack of due process, * * * ."

In the recent case of *Tompa* v. *Commonwealth of Virginia*, 4 Cir., 331 F. 2d 552, 554, it was held that mistakes in judgment or trial tactics by defense counsel do not deprive an accused of a constitutional right and do not entitle him to a writ of habeas corpus. See also, *Snead* v. *Smyth*, 4 Cir., 273 F. 2d 838, 842; *Trammell* v. *State*, 276 Ala. 689, 166 So. 2d 417, 419; *People* v. *Strader*, 23 Ill. 2d 13, 177 N. E. 2d 126, 132; *Bryant* v. *Warden of Maryland Penitentiary*, 235 Md. 658, 202 A. 2d 721, 722.

Where the delinquencies of counsel chosen and employed by a defendant are concerned the representation must be so inadequate as to make the trial a farce and a mockery of justice in order that the judgment of conviction may be avoided. 21 Am. Jur. 2d, Criminal Law, § 315, pp. 342, 343; Annotation: 74 A. L. R. 2d, § 4(b), p. 1403 *ff.*

In the recent case of *Root* v. *Cunningham*, 4 Cir., 344 F. 2d 1, it is said: "Ordinarily, one is deprived of effective assistance of counsel only in those extreme instances where the representation is so transparently inadequate as to make a farce of the trial. *Snead*

v. *Smyth*, 273 F. 2d 838 (4th Cir. 1959). This is especially true where, as here, the defendant chose and employed his own counsel." 344 F. 2d at 3. See also, *O'Malley* v. *United States*, 6 Cir., 285 F. 2d 733, 734; *Trammell* v. *State*, *supra*, 276 Ala. 689, 166 So. 2d 417, 419; *People* v. *Strader*, *supra*, 23 Ill. 2d 13, 177 N. E. 2d 126, 132; *Rice* v. *Davis* (Ky.), 366 S. W. 2d 153, 156, 157; *Bryant* v. *Warden of Maryland Penitentiary*, *supra*, 235 Md. 658, 202 A. 2d 721, 722; *Wyatt* v. *State*, 243 S. C. 197, 133 S. E. 2d 120, 121.

As is said in the annotation on "Conviction—Incomptency of Counsel," "the cases are few indeed in which it has been held that the representation furnished an accused by counsel of his own choice was so inadequate that his conviction was void." 74 A. L. R. 2d, pp. 1397, 1398.

Usually the charge of incompetent or inadequate representation comes from a convicted defendant. Here the charge comes mainly from the attorneys themselves. But that circumstance, unusual as it may be, does not require the abandonment of the well-settled rules by which such charge of incompetency should be weighed and its effect determined. On the contrary, for obvious reasons, this circumstance demands that these principles should be firmly adhered to.

Hillard's testimony and the petitioners' brief carry the implication that Hillard was misled by his conversation with the Commonwealth's attorney to believe that the serious charge of robbery made in the indictments would not be pressed at the trial. In its oral opinion at the conclusion of the habeas corpus proceeding the trial court pointed out that the testimony of the Commonwealth's attorney "flatly contradicts" that of Hillard; that he told Hillard "all the time that he was going to insist upon" the presentation of the serious charge because "of these defendants' records."

In their testimony both Hillard and Woodward said that they did not sense until near the *end of the trial* that the Commonwealth's attorney would press for a conviction on the charge of robbery. It is inconceivable that experienced trial attorneys could have been so misled when the first witness introduced by the Commonwealth testified that Hoffler had taken the keys to the truck from Jordan at the point of a pistol. Moreover, in its oral opinion, the trial court observed that counsel should have noted from the opening

statement of the attorney for the Commonwealth the serious nature of the charges against their clients.

But even if the testimony of Hillard and Woodward be taken at its face value, it shows nothing more than that they were mistaken in their judgment as to the seriousness of the charges. The courts are unanimous in the view that such mistakes of judgment do not constitute a lack of sufficient representation of counsel as to validate a judgment of conviction.

Again, these attorneys say that they failed to investigate the case and locate and interview material witnesses. The trial court likewise rejected that assertion, pointing out that "this wasn't a case where no real investigation was made. Apparently people knew what had gone on here, they knew something about these facts, and they knew who these witnesses were, and when the defendant got on the stand he indicated that a lot of them had already been called." The clear implication from Hoffler's testimony is that these attorneys were fully aware of the investigation which had been made and had sufficient knowledge to prepare a defense.

It is next contended that the failure of these attorneys to secure the attendance of these witnesses, of whom Hoffler was aware, and to put on the stand the witness Coffield who was actually present, constituted a fatal delinquency which should avoid the judgments of conviction. But here, too, the courts have universally held that the failure to produce and put on the stand material witnesses is merely an error of judgment which does not constitute lack of effective representation of counsel.

In *Tompa* v. *Commonwealth of Virginia, supra,* 4 Cir., 331 F. 2d 552, the precise claim was there made and rejected, the court pointing out that if the failure to call material witnesses was a mistake, "it was clearly a mistake in judgment or in trial tactics and it has been repeatedly held that such mistakes do not deprive an accused of a constitutional right." 331 F. 2d at 554. Numerous authorities are cited in support of that holding.

It is interesting to observe that while the petitioners now attack the manner in which their cases in the criminal proceeding were prepared and presented, they employed the same attorneys to prosecute appeals on their behalf. Not until their defenses had been weighed in the balance and found wanting on their appeal did they contend that they had not been properly represented in the criminal proceeding.

The sum total of the delinquencies of these attorneys which they have professed in the habeas corpus proceedings does not, in our opinion, show that their representation of the defendants was so lacking that the trial was a farce and a mockery of justice. On the contrary, the record in the criminal cases shows that the defense was vigorously presented by these experienced attorneys, all of whom, as has been said, participated in the trial. Our former opinion shows that such defense was fully presented and weighed on appeal.

We agree with the finding of the trial court that the evidence adduced on behalf of the petitioners in the habeas corpus proceedings, including the testimony of the three attorneys, fails to show that the petitioners were denied the effective assistance of counsel guaranteed to them under the State and Federal Constitutions. The trial court observed that to grant the writs in these cases "would open the door to all kinds of carelessness, to say the least." But more than that, it would be an invitation to an attorney who had unsuccessfully defended a criminal prosecution to seek to avoid the conviction by professing in a habeas corpus proceeding that he had not adequately defended his client.

The final contention of the petitioners is that they were deprived of their constitutional right to a trial by jury when they relied on the advice of their retained counsel that an agreement had been reached between them and the Commonwealth's attorney that they, the petitioners, would be prosecuted on the minor charge of assault, and that "[u]nder these conditions their waiver was not understandingly made."

It is true that, "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst*, 304 U. S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. ed. 1461, 146 A. L. R. 357. But in the present case there was no showing that the petitioners were unaware of their right to a jury trial which they waived. On the contrary, the evidence showed that they discussed the matter with their attorneys and knew full well that they were entitled to a jury trial and voluntarily waived such right. Obviously they and their attorneys thought that they would fare better with the court than they would at the hands of a jury. Clearly such a choice by them was knowingly and understandingly made.

The judgment denying the writ of habeas corpus in each case is

*Affirmed.*