## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

WILLIAM HENRY ANDERSON v. C. C. PEYTON, SUPERINTENDENT
OF THE VIRGINIA STATE PENITENTIARY.

April 28, 1969.

Record No. 6870.

Present, All the Justices.

*Robert P. Beaver* for plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

On June 1, 1966, William Henry Anderson, defendant, was convicted by a jury of statutory burglary, and sentenced to serve 5 years in the penitentiary This court refused to grant defendant a writ of error and *supersedeas*, thereby affirming the judgment of conviction.

On December 9, 1966, defendant filed his petition for a writ of habeas corpus in the court below, claiming that his conviction was void because of ineffective representation by counsel. The case was heard by the judge designate, and the writ was denied. We granted defendant a writ of error.

The background of this case is as follows: On February 8, 1966, a store, owned by J. R. Mills, and located on Route 33 in Hanover County, was burglarized. Travis Ray Chisholm, James Rudolph Chisholm, Hammond W. Wood, Jr. and the defendant Anderson were arrested and charged with the burglary. Travis Ray Chisholm and Wood were indicted, pleaded guilty and were sentenced to the penitentiary. James Rudolph Chisholm, an infant of 15, was tried as a juvenile and committed to the State Board of Welfare and Institutions.

On March 17, 1966, James C. Kent of Ashland, Virginia was appointed counsel for defendant. Kent was 47 years old and had been engaged in the general practice of law in Hanover and surrounding counties and the City of Richmond since 1951.

A preliminary hearing for defendant resulted in the case being certified to the grand jury. Kent was then appointed to represent the defendant in his trial in the circuit court.

Between the preliminary hearing and the jury trial of defendant in the court below, Kent had interviews with defendant, ascertained the names of witnesses, interviewed Virginia Trooper L. B. Mitchell on several occasions, talked to two of the parties who were involved in the robbery and made and received many phone calls.

The record shows that at the trial of defendant, Kent made an opening statement, conducted examination and cross-examination of witnesses, interposed some objections, noted exceptions to certain actions of the trial court, made final argument to the jury and upon the return of the verdict of guilty, moved that it be set aside as contrary to the law and the facts in the case. He excepted to the action of the court in overruling the motion. His actions enabled defendant to petition for a writ of error and have this court review and consider the merits of his case.

In the habeas corpus proceeding now before us, defendant points to numerous acts of omission and commission by Kent in the conduct of his trial for statutory burglary, and contends that his counsel's representation was so ineffective as to make the trial a farce and a mockery of justice. We examine his several allegations of ineffectiveness.

■ Defendant complains because Kent did not strike from the jury panel Leslie D. Campbell, Sr., father of Leslie D. Campbell, Jr., who is a law partner of Andrew J. Ellis, Jr., the Commonwealth's Attorney of Hanover County. There is nothing in the record to indicate that Mr. Campbell was prejudiced, biased or influenced by the fact that his son is the law partner of Ellis. Kent stated that he knew Campbell, Sr. well enough to conclude that the relationship would have no bearing on his sitting as a juror.

Defendant further points to the failure of Kent to strike Floyd T. Ball, who is alleged to be the son of the owner of another store in Hanover County that had been burglarized. Kent was not personally acquainted with Mr. Ball, and there is nothing to indicate that Ball was prejudiced or biased.

The decision as to who should be stricken from a jury panel is peculiarly a matter in which counsel must use his own discretion and judgment, for there are many factors and considerations involved. Jurors Campbell and Ball were not disqualified for the reasons alleged by defendant, and there is no evidence from which we could infer that defendant was, or might have been, prejudiced by their service on the jury that tried him.

■ Defendant complains because no instructions were asked for by his attorney. Kent testified that he had prepared instructions but did not submit them because those requested by the Commonwealth's Attorney, and granted by the court, were basically the same as the ones he had prepared. He felt that additional instructions would only confuse the issue.

The trial court instructed the jury that defendant was presumed to be innocent and that this presumption went with defendant throughout all stages of the trial; that the burden of proof rested on the Commonwealth; and that the duty was on the Commonwealth to show that defendant was guilty beyond a reasonable doubt.

Whether additional instructions were needed was the decision for the attorney trying the case, and a trial tactic which necessarily varies with cases and with counsel. The instructions given in the trial of defendant were adequate to present his defense and upon which he predicated his argument to the jury.

Defendant points to instances in which his attorney failed to interpose objections to leading and argumentative questions asked by the Commonwealth's Attorney. True, the record does show questions asked that were leading and to which no objection was made. In every trial a decision has to be made by counsel as to what extent

he will interpose objections to leading and improper questions. Kent evidently concluded that defendant's cause was not being hurt either by the questions, or the sharp examination by the Commonwealth's Attorney, and we cannot say that this conclusion was an error, or that his judgment was the result of his ineffectiveness.

The most serious allegation challenging the conduct by Kent in the defense of Anderson is that at the conclusion of the direct testimony of Trooper Mitchell, Kent should not have cross-examined this witness. And that, in any event, he should not have asked the trooper: "What was your basis for issuing those warrants?" This referred to warrants issued against defendant, the Chisholms and Wood. Defendant claims that at this point in the trial no witness had connected him with the burglary, and that the question had the effect of letting in hearsay evidence upon which he was convicted.

Admittedly, at this stage in the trial the Commonwealth had not proved its case. The owner of the store had testified regarding the burglary, the manner in which the store had been entered and the items stolen. Trooper Mitchell had testified of his investigation of the burglary; that five days after the crime he was called by Richmond police who had obtained information pertaining to the case; that a search warrant for the home of Travis R. Chisholm at 908 Perry Street, in Richmond, had uncovered certain stolen property; and that at the same time Chisholm had taken them next door to 910 Perry Street and picked up a saw which was identified as having been stolen from the Mills store.

Kent then took Mitchell on cross-examination and asked "the basis for issuing the warrants". Responding to this question, the trooper said that Travis Ray Chisholm stated when arrested that a green Chevrolet pickup truck was the vehicle used to transport the parties and the stolen goods; that the Chisholms and Wood described the man who drove the truck as "Willie", his age as approximately 45, and the fact that he was known to frequent beer joints in the south side of Richmond; that when he inquired of the Richmond Police Department if they had any knowledge of such a person as "Willie", they showed him a picture of defendant, Anderson; and that the two Chisholms and Wood identified the man in the picture as the "Willie" who drove the truck and participated in the burglary.

Trooper Mitchell further testified that all three confessed, but that when the defendant was arrested on March 12th, he denied ever having been at or near Mills Store. However, Trooper Mitchell,

referring to the actions of defendant at a later date, March 17th, testified:

"At this time he wanted to make a deal, that he either be dismissed or get a suspended sentence on this charge in return for information that he would give to the Police Department of Henrico County. I told him that I could not make a deal, that I would relay the information to Mr. Ellis, who was Commonwealth Attorney."

Trooper Mitchell also said: "I asked him if he would tell me about the trip up 33, that is when he said he wanted to make a deal. I told him that I couldn't make any deal."

Following the testimony of the trooper, the Commonwealth's Attorney called Travis Ray Chisholm and James R. Chisholm who admitted that they and Wood burglarized the Mills store. They refused to implicate defendant, and, in effect, denied having made any statements to the trooper, or in previous trials, involving defendant, or as having identified defendant as the "Willie" who drove the truck. It was the alleged sharp and argumentative examination of these two witnesses by the Commonwealth's Attorney that defendant says should have been objected to by Kent.

At this point the Commonwealth's Attorney rested his case. He was later permitted, over the objection of Kent, to recall Trooper Mitchell for the purpose of contradicting the testimony given by the Chisholms. The Commonwealth's Attorney stated to the trial court that the testimony of the Chisholms took him by surprise in that they testified differently from what he had anticipated they would, in view of their prior testimony in court and prior statements made to him personally. Upon recall, the trooper said that Travis Ray Chisholm had testified in a previous trial that defendant was present at the time of the burglary, and during his investigation and conferences with him, Chisholm had identified the picture of "Willie" as that of defendant.

If no cross-examination had been conducted by Kent of Trooper Mitchell, and if we assume that the testimony of the Chisholms would have been the same, and that the Commonwealth's Attorney would not have recalled the trooper for further questioning or introduced any further evidence, the evidence was not sufficient to have convicted defendant.

However, we cannot make such an assumption, and apparently Kent did not. In considering whether counsel was ineffective we

have to view this case in its setting, and in the same perspective as it must have been viewed by Kent.

The Mills burglary had been thoroughly aired in the county, circuit and juvenile courts of Hanover County by the time defendant was tried on June 1, 1966. In preparing for trial, Kent had ascertained that three of the participants had admitted guilt and been sentenced. He had interviewed the trooper and knew what evidence he would most likely give. He also knew that when arrested both Chisholms and Wood had stated that there was a fourth participant in the burglary, known to them as "Willie", and that the three had positively identified a picture of the defendant, William H. Anderson, as the "Willie" who was their accomplice.

It is true that Kent had reason to believe on the day of trial that the Chisholm boys and Wood were going to testify for Anderson. But he undoubtedly had qualms about whether their testimony would stand up under cross-examination in view of their previous contradictory testimony and statements. Kent concluded that his best strategy was to focus on the unreliability of the evidence of the three alleged accomplices of the defendant, the vagueness and confusion in their testimony and identification, and the fact that they had identified defendant from a picture which was not in evidence. Manifestly Kent feared that the Commonwealth had sufficient evidence to connect defendant with the burglary but hoped that the jury would view this evidence with suspicion, and regard the testimony as too vague and confusing to justify a finding of guilt beyond a reasonable doubt.

It is obvious from the testimony of Trooper Mitchell that he regarded the voluntary statements of defendant on March 17, 1966, when defendant was seeking a deal, as a confession by defendant and as implicating him in the burglary. While this testimony was elicited on cross-examination we cannot assume that had it been necessary to prove a case the Commonwealth's Attorney would not have recalled Mitchell to give the same testimony. Neither can we say that the judgment exercised by Kent in conducting his case, with the background that existed, and with his knowledge of the facts and the principals involved, was erroneous.

The principles which control the issues here have been cogently stated and pertinent authorities collected by Mr. Justice Snead in *Peyton* v. *Fields*, 207 Va. 40, 147 S. E. 2d 762 (1966) and Mr. Chief Justice Eggleston in *Hoffler* v. *Peyton*, 207 Va. 302, 149 S. E. 2d 893 (1966). We quote from the *Hoffler* case as follows:

"One who is serving a sentence and seeks relief by habeas corpus on the ground that the negligence and incompetence of the attorney who conducted his defense amounted to a denial of his right to the assistance of counsel guaranteed under the State and Federal Constitutions has the burden of proving the charge made. [Citing cases and authority.]

"Ordinarily, lack of preparation, mistakes or errors of judgment, improper advice or trial strategy in connection with a case are insufficient to justify setting aside a judgment of conviction. [Citing authorities.]

"Among the cases which support this principle is *Penn* v. *Smyth*, 188 Va. 367, 49 S. E. 2d 600. There we held that the failure of counsel employed by the defendant to 'exercise a high degree of professional diligence' did not constitute an ineffective representation of counsel or render the trial a nullity; that the 'acts of omission and commission by counsel' are merely risks which every litigant must take. 188 Va. at 372, 49 S. E. 2d at 602.

"In *United States ex rel. Bloeth* v. *Denno*, 2 Cir., 313 F. 2d 364, 374, it was said that, 'Poor tactics of experienced counsel, * * * even with disastrous result, may hardly be considered lack of due process, * * *.'

"In the recent case of *Tompa* v. *Commonwealth of Virginia*, 4 Cir., 331 F. 2d 552, 554, it was held that mistakes in judgment or trial tactics by defense counsel do not deprive an accused of a constitutional right and do not entitle him to a writ of habeas corpus. [Citing cases.]

"Where the delinquencies of counsel chosen and employed by a defendant are concerned the representation must be so inadequate as to make the trial a farce and a mockery of justice in order that the judgment of conviction may be avoided. [Citing authorities.]

"In the recent case of *Root* v. *Cunningham*, 4 Cir., 344 F. 2d 1, it is said: 'Ordinarily, one is deprived of effective assistance of counsel only in those extreme instances where the representation is so transparently inadequate as to make a farce of the trial. *Snead* v. *Smyth*, 273 F. 2d 838 (4th Cir. 1959). This is especially true where. as here, the defendant chose and employed his own counsel.' [Citing numerous cases.]" 207 Va. at 308, 309, 310, 149 S. E. 2d at 897, 898.

We have examined carefully the record in this and the burglary case. We have noted and considered the numerous actions of Kent

which, the defendant contends, show ineffective representation. The most that can be said is that the attorney for defendant may have made mistakes in judgment or trial tactics. Undoubtedly, if the case were retried, Kent would pursue a different course of action and adopt other trial tactics. This can be said of most attorneys who find themselves on the losing side of a case. Furthermore it is by no means certain that had Kent pursued a different course in the instant case the result would have been different.

We hold that defendant has failed to carry the burden of proving the charge of ineffective assistance of counsel. The judgment of the trial court denying and dismissing the writ of habeas corpus is therefore

*Affirmed.*