No. 46,812

Lou B. Winter, *Appellant,* v. State of Kansas, *Appellee.*

(502 P. 2d 733)

Opinion filed November 4, 1972.

*Tracy D. Klinginsmith,* of Holton, argued the cause and was on the brief for the appellant.

*Edward S. Dunn,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the petitioner from an adverse judgment in a proceeding instituted pursuant to K. S. A. 60-1507 on November 24, 1971, attacking the sentence imposed upon him by the Jackson County district court.

The three points raised by the petitioner in his motion all challenge the competence of his counsel both in the lower court and on appeal in the criminal action.

In June, 1967, the petitioner was tried before a jury for first degree murder of his wife. The appellant was found guilty and was sentenced to serve a term of life imprisonment in the Kansas State Penitentiary. An appeal taken from the decision and judgment of the trial court was affirmed by this court in *State v. Winter,* 203 Kan. 458, 454 P. 2d 491.

First, the petitioner contends he was deprived of due process of law because of ineffective assistance of counsel in the selection of the jury for his trial. Second, the petitioner asserts he was denied due process of law by the ineffective assistance of counsel in the appeal which was taken from the judgment and sentence rendered at his trial. And third, the petitioner contends he was deprived of due process of law because there existed a lack of substantial evidence to support his conviction.

When the criminal charges were initially filed against the petitioner, James E. Parmiter, an attorney regularly admitted to practice and residing in Holton, Kansas, was appointed to represent him. Mr. Parmiter stated to the petitioner that he did not feel competent to try a murder case. Thereupon the petitioner employed private counsel. He employed Sam A. Crow of Topeka, an experienced criminal lawyer. Testimony in the record by the petitioner, given at the evidentiary hearing granted on the 1507 motion, disclosed the petitioner employed Mr. Crow to try the matter and carry it

through all the proceedings to the Supreme Court. Mr. Crow represented the petitioner and was present at the preliminary hearing and at the trial. In addition Mr. Crow's partner Bill Honeyman (formerly with the U. S. Attorney's office) and Mr. Parmiter sat at the counsel table and assisted in the selection of a jury and at the petitioner's trial.

The selection of the jury consumed approximately three days during which time the petitioner conferred with and assisted his attorneys in the selection of the jury.

The petitioner contends two jurors who served had previously been connected with Jackson County. The foreman of the jury had served as a county commissioner of Jackson County, and another juror had been an employee of Jackson County. Because of their acquaintance with the prosecuting attorney and the sheriff of Jackson County, and their friendliness towards them, the petitioner asserts they were partial to the State's case, therefore unable to render an impartial decision. As a result the petitioner contends he was denied a fair and impartial trial in violation of his constitutional rights.

The petitioner relies upon *Anderson v. Peyton*, 209 Va. 798, 167 S. E. 2d 111, for the proposition that the decision as to who should be stricken from a jury panel is peculiarly a matter in which counsel must use his own discretion and judgment. Based thereon the petitioner contends Mr. Crow was negligent in permitting the two members of the jury who had been previously associated with Jackson County to sit as jurors in the cause, and that such negligence resulted in prejudice to his case thereby denying him a fair and impartial trial in violation of his constitutional rights. The *Anderson* case upon which the petitioner relies does not uphold him. There as here counsel representing the defendant exercised his own discretion and judgment, and there was no evidence from which prejudice on the part of the jurors could be inferred.

The record here discloses that no evidence whatever was presented at the hearing on the motion to show any of the jurors were prejudiced against the petitioner. The trial court found no evidence whatever had been presented at the hearing to sustain the petitioner's charge. Other vague complaints are made concerning the jury but they have no foundation in the record.

The second point asserted by the petitioner concerns his employment of counsel. The petitioner claims Mr. Sam A. Crow of Topeka,

the attorney of record for the petitioner in the criminal action, agreed to represent him at all stages of the proceedings, including his appeal from the trial. The record discloses James E. Parmiter of Holton, Kansas, presented the petitioner's appeal to the Supreme Court. There is evidence in the record made at the hearing on the 1507 motion that Mr. Crow did in fact perfect the appeal and assisted in the preparation of the brief presented on appeal. His name however did not appear on the briefs presented to the Supreme Court.

The petitioner contends because Mr. Parmiter stated he did not feel personally qualified to try a murder case, that he was not qualified to perfect and present the appeal to the Supreme Court. The petitioner relies on *State v. Kane*, 52 Hawaii Rep. 484, 479 P. 2d 207, for the proposition that the guarantee of assistance of counsel will not be satisfied by the mere formal appointment of an attorney. There the Supreme Court of Hawaii said, "The defendant's right to the effective representation of counsel necessarily imposes upon the trial judge a corollary duty to protect that right whenever its enjoyment appears to be in doubt." (p. 487)

Although the petitioner argues his situation was similar to that in the *Kane* case, we fail to see any factual similarity. The petitioner contends he had no faith in Mr. Parmiter to perfect his appeal, particularly in view of the latter's statement that he did not feel qualified to try a murder case. It is argued this raises sufficient doubt with the court that Mr. Parmiter was unable to give the petitioner effective assistance of counsel on his appeal from the trial. (Citing, *Bentley v. State of Florida*, 285 F. Supp. 494 [1968].)

The trial court entertained no doubt that petitioner was well represented by three attorneys at the trial, all of whom were regularly admitted to practice in this state and in good standing. Mr. Parmiter had served as county attorney in Jackson County and has been practicing for many years. When Mr. Parmiter said he didn't feel qualified to try the murder case, he did not have reference to the appeal. He assisted Mr. Crow and Mr. Honeyman during the trial of the case, he knew the background of the case and was effective in perfecting the appeal. (See, *State v. Winter*, supra.)

For his third point the petitioner asserts his attorney failed to introduce pertinent evidence and testimony in the case which

would have been beneficial to him. He contends this point goes to the adequacy of representation by counsel.

The petitioner first contends a transcript of the testimony of Dr. John Lattimore should have been read at the trial. Dr. Lattimore passed away between the time of the preliminary hearing and the trial, and Dr. Woods, a neurosurgeon at the Menninger Foundation who assisted in the autopsy, testified at the trial. Dr. Woods assisted Dr. Lattimore in making an autopsy of the body of Mrs. Winter. Dr. Woods testified at the trial and said the bullet wound to Mrs. Winter's head was the direct cause of her death. The transcript testimony of Dr. Lattimore given at the preliminary hearing was to the effect that the wound alone possibly would not have killed a person, if it had not been for the blood that seeped around the base of the brain—that it is not from the bullet wound directly that the person dies. It is the irritation that occurs around the base of the brain.

Mr. Crow refused to submit the transcript testimony of Dr. Lattimore on behalf of the defendant at the trial.

At the hearing on the petitioner's 1507 motion he asserts for the first time that he was shooting at a gun in the hand of his wife, when the bullet accidentally struck her in the head. There is no evidence whatever in the record of the trial of the criminal action that the petitioner's wife had a gun in her hand when the shooting occurred. This uncorroborated statement of the petitioner in the record is contrary to his testimony at the trial and was given no credence by the trial court.

The trial court in announcing its decision after the hearing on the motion said:

". . . The Court remembers this trial. I was the trial judge at the trial. And the Court remembers it quite well. This trial, as I recall, lasted three days. It took three days to select the jury and three days to try the case after the jury was selected. This is my recollection. I think the verdict came in in the middle of the afternoon on a Saturday. We started Monday and finished Saturday, as I recall. The defendant was represented by Mr. James E. Parmiter, Mr. Same [*sic*] Crow of Topeka and Mr. Bill Honeyman from Topeka. Mr. Parmiter is of Holton. Mr. Crow and Mr. Honeyman are known to this Court to be competent, able attorneys, experienced in the trial of cases and experienced in the trial of criminal cases. Throughout the preliminary matters, prior to the actual trial a multitude of motions were lodged in this case and the Court heard hearing after hearing after hearing of all kinds of motions. We had a habeas corpus hearing even, as I recall. Every conceivable defense that I could think of, and I think that Mr. Crow could think of was raised. As to the selection of the jury, the number of thirty-six was passed for cause. Each side then struck

twelve. This is the way we proceed. During the selection of the jury the Court observed, personally, Mr. Winter discussing the strikes before they were made on behalf of the defendant. The defendant had twelve chances to strike, the same as the State did. Now, the Court recalls that Dr. Lattimore died after testifying in the preliminary hearing and before the trial of the case in this court. It is inconceivable to me to see how Dr. Lattimore's testimony would be helpful to Mr. Winter. It is absolutely inconceivable to me to see how this would be helpful. I think Mr. Crow would have been, well, let's say it this way, I think he would have been out of his mind to put Dr. Lattimore's testimony on on behalf of the defendant. Now, this case was vigorously defended. There were many post-trial motions filed, which Mr. Crow and Mr. Honeyman and Mr. Parmiter participated in. Now, going back to the trial again, Mr. Winter says that he complains a little bit about the jury didn't deliberate very long. I don't remember, except it seems to me it was somewhere in the neighborhood of one hour. It wasn't a very long deliberation; this is true. But it seems to me the evidence in this case was overwhelming against Mr. Winter. There were several eye witnesses to this matter. Now, Mr. Winter says now that he was shooting at a pistol that was in his wife's hand. His evidence, as I recall, he took the stand in this case, and as I recall it, he complained he had a black-out. This is my recollection of his evidence; he blacked out; and this was part of the defense. The jury convicted, found the man guilty, and as I say, the evidence was overwhelming pointing to guilt. . . ."

## ABA Standards for Criminal Justice, Defense Function, § 3.1 (b), P. 157, pertaining to the establishment of the lawyer-client relationship, provides:

"The conduct of the defense of a criminal case requires trained professional skill and judgment; therefore, the technical and professional decisions must rest with the lawyer without impinging on the right of the accused to make the ultimate decisions on certain specified matters, as delineated in section 5.2."

## ABA Standards for Criminal Justice, Defense Function, § 5.2, P. 162, reads:

"5.2 Control and direction of the case.

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf.

(b) The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client.

(c) If a disagreement on significant matters of tactics or strategy arises between the lawyer and his client, the lawyer should make a record of the circumstances, his advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relation."

K. S. A. 1971 Supp. 7-125, DR7-101 (B) (1) provides that in his representation of a client, a lawyer may, where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client.

The Aid to Indigent Defendants Act (K. S. A. 1971 Supp. 22-4501) provides for a panel of lawyers who may be appointed to represent "indigent" defendents and by implication allows the court to place thereon only selected lawyers. But, there is no law in Kansas that otherwise establishes a standard of competence for defense lawyers.

The adequacy and effectiveness of an attorney's services on behalf of an accused in a criminal action must be gauged by the actual representation afforded the accused in its totality. To be a denial of an accused's constitutional rights it must clearly appear that the representation of the accused was wholly ineffective and inadequate. (*State v. Richardson,* 194 Kan. 471, 487, 399 P. 2d 799; and *Widener v. State,* 210 Kan. 234, 236, 499 P. 2d 1123.) The burden is on the petitioner to show the representation by his attorney was so incompetent and inadequate that the total effect was that of a complete absence of counsel. (*Shores v. State,* 195 Kan. 705, 709, 408 P. 2d 608; *Toland v. State,* 200 Kan. 184, 434 P. 2d 550; and *Baker v. State,* 204 Kan. 607, 614, 464 P. 2d 212.)

The code of professional responsibility provides that a lawyer shall not handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it. (K. S. A. 1971 Supp. 7-125, DR6-101 [A] [1].)

The general rules concerning competence of counsel seem to have originated insofar as the federal constitution is concerned in the federal circuit courts of appeal. The rule is basically that the incompetency of private counsel for the defendant in a criminal prosecution is neither a denial of due process under the Fourteenth Amendment, nor an infringement of the right to be represented by counsel under either the state or federal constitution unless the attorney's representation is so lacking that the trial has become a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation, in which case the judgment, violating either the Fifth, Sixth or Fourteenth Amend-

ment to the federal constitution, or a provision of a state constitution, is void. (*Scalf v. Bennett,* 408 F. 2d 325 [1969], and authorities cited therein; and see *Stem v. Turner,* 370 F. 2d 895 [1966]; *Pope v. United States,* 287 F. Supp. 214 [1967]; *Bentley v. State of Florida, supra;* and 74 A. L. R. 2d 1397.)

In *United States v. Ragen,* 166 F. 2d 976 the court said:

"Whenever the court in good faith appoints or accepts the appearance of a member of the bar in good standing to represent a defendant, the presumption is that such counsel is competent. Otherwise, he would not be in good standing at the bar and accepted by the court. The constitutional requirements have been met as to the necessity for counsel." (p. 980)

A proceeding on a motion to set aside a sentence pursuant to K. S. A. 60-1507 is a civil proceeding and the burden of proof is upon the petitioner. (*Jackson v. State,* 204 Kan. 823, 465 P. 2d 927.) Mere conclusionary contentions of a petitioner for which no evidentiary basis is stated or appears are not sufficient basis for relief from conviction. (*Wolfe v. State,* 201 Kan. 790, 443 P. 2d 260.) The trial court in the hearing held on January 7, 1972, found the petitioner's three trial counsel adequately, effectively and competently defended him during the trial of the criminal action. We have scrutinized the entire record with care only to arrive at the same conclusion as the district court. On appeal in the criminal action Mr. Parmiter adequately, effectively, fairly and competently represented the petitioner based upon the foregoing law and gauged by the totality of his representation.

The petitioner has failed to sustain the burden of proof cast upon him to show that he is entitled to the relief requested in his motion attacking the sentence pursuant to K. S. A. 60-1507.

The judgment of the lower court is affirmed.