NOT DESIGNATED FOR PUBLICATION

No. 114,773

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANTHONY BARNES,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed October 28, 2016. Affirmed.

*Michael P. Whalen* and *Krystle M.S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., STANDRIDGE, J., and HEBERT, S.J.

*Per Curiam*:  Anthony Barnes appeals the district court's denial, following an evidentiary hearing, of his K.S.A. 60-1507 motion alleging ineffective assistance of counsel. On appeal, Barnes claims that his trial counsel was ineffective because instead of calling a psychiatrist to testify as an expert witness as part of a mental disease or defect defense, counsel stipulated to the contents of the psychiatric report. For the reasons stated herein, we affirm the district court's judgment.

1

On March 13, 2006, Barnes was standing outside of a QuickTrip convenience store smoking a cigarette. Prentiss Cherry entered the store to purchase a soda. Inside the store, Cherry joked with Brian Hall, the store clerk, as he paid for the soda. When Cherry exited the store, Barnes approached him with a gun and told him to stop laughing. Cherry fled from Barnes; rather than follow Cherry, Barnes entered the QuickTrip and shot Hall in the head, killing him. Barnes left the store and stood by the pay phones, smoking a cigarette.

The police arrived soon after Barnes shot Hall. When an officer instructed Barnes to drop his gun, he did not immediately comply; instead, he continued smoking and informed the police that when he finished his cigarette, he was going to shoot one of them. When Barnes finished smoking his cigarette, he set his gun on the curb and turned around, placing his hands on the wall of the store. The police arrested Barnes and after he waived his *Miranda* rights, Barnes confessed to shooting Hall and menacing Cherry. Barnes also told the officers that he shot Hall because he and Cherry were laughing at him.

On March 15, 2006, the State charged Barnes with one count of first-degree murder and one count of aggravated assault. Prior to trial, Barnes' public defender filed a motion to determine competency to stand trial, which was granted. After reviewing a report from ComCare, the district court found Barnes competent to stand trial. Barnes' new attorney, Phillip White, filed a written notice with the district court of his intent to pursue a mental disease or defect defense. White retained an expert, John Wisner, M.D., a clinical associate professor at the Kansas University School of Medicine, to evaluate Barnes' mental health status.

Wisner evaluated Barnes and prepared a report dated January 5, 2007. In the report, Wisner stated that Barnes suffers from chronic paranoid schizophrenia, which was "at [its] height in terms of the extent and intensity of symptoms" at the time of the

2

shooting. According to Wisner's report, on the day of the shooting Barnes was under the "delusional conviction that everyone in his environment was engaged in a concerted effort to belittle, accuse, shame, and persecute him." Wisner's report further stated that Barnes believed he was being "told" that "he was an object of sexual derision, and that his ex-wife was sexually acting out with 'everybody.'" Wisner's report concluded that when Barnes shot Hall, Barnes was

> "in a momentary, virtually instantaneous state of inflamed emotion, anger, shame, fear, and a defensive mind set which precluded any premeditation or specific murderous intent against any specific victim. *Mens rea* in the sense of willful, intentional, or however briefly premediated murder was not possible given [his] mental status at the time."

Barnes' jury trial began on September 26, 2007. During the trial, Barnes told White that he wanted to change his plea to guilty. White was concerned that Barnes did not understand the implications of what he was asking; he also was hesitant because if the plea proceeded, Barnes' mental disease or defect defense would not be preserved for appeal. White requested a recess so he could speak with Barnes to explain the constitutional rights that he would forfeit if he pled guilty. He also spoke with Barnes about asking for a bench trial, explaining that this would allow his mental disease or defect defense to be preserved for appeal.

Barnes agreed to the bench trial, so White asked the State if it had any objections to dismissing the jury and proceeding with a bench trial. White also asked the State if it would stipulate to Wisner's psychiatric evaluation report, instead of hearing live testimony from Wisner. The State agreed to both requests. The district court accepted Barnes' waiver of a jury trial and allowed the trial to continue as a bench trial. At the close of the evidence, the district court rejected Barnes' mental disease or defect defense and found him guilty of both counts.

On April 4, 2008, the district court sentenced Barnes to life imprisonment without the possibility of parole for 25 years for the first-degree murder conviction and 14 months' imprisonment for the aggravated assault conviction, to be served consecutively. Our Supreme Court denied Barnes' direct appeal. *State v. Barnes*, 293 Kan. 240, 262 P.3d 297 (2011).

On October 5, 2012, Barnes filed a motion under K.S.A. 60-1507, raising eight claims of ineffective assistance of counsel. The district court held a nonevidentiary hearing and denied Barnes' motion. On appeal, Barnes raised only a claim of ineffective assistance of counsel stemming from White's failure to call Wisner as a witness at the trial; all other issues were deemed abandoned. *Barnes v. State*, No. 110,305, 2014 WL 7653859, at *4 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1008 (2015). This court reversed and remanded for an evidentiary hearing. 2014 WL 7653859, at *7.

The district court held an evidentiary hearing on October 30, 2015. White, Barnes, and Wisner testified at the hearing. After hearing the evidence, the district court again denied Barnes' K.S.A. 60-1507 motion, finding that Barnes failed to establish ineffective assistance of counsel. Specifically, the district court found that White's decision to stipulate to Wisner's report was a strategic decision that could not be deemed ineffective. The district court also found that Barnes failed to show that the outcome of the trial would have been any different had Wisner testified. Thus, the district court found that Barnes failed to meet either prong of the test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Barnes appealed the district court's denial of his motion to this court.

On appeal, Barnes contends that the district court erred in finding that he failed to establish ineffective assistance of counsel under the standard articulated in *Strickland*. Regarding the first prong, Barnes claims that White's performance was deficient because

4

he introduced Wisner's expert report by stipulation rather than calling Wisner as a witness to testify. Barnes claims that White failed to consult with him and obtain his approval before making the decision to stipulate to the contents of Wisner's report. Barnes also claims that White did not make reasonable investigations prior to his decision to stipulate to the report. Finally, Barnes claims that he was prejudiced by Wisner's failure to testify because had he done so, the outcome of the trial would have been different.

The State argues that Barnes failed to meet either prong of the *Strickland* test. First, the State argues that White's decision to stipulate to the report was a tactical decision that was made after consulting Barnes. Next, the State contends that the evidence shows that White fully investigated Barnes' mental health history prior to making his decision to stipulate to the report. Finally, the State argues that even if Barnes established that White's performance was deficient, his motion should still have been denied because he cannot show prejudice under *Strickland*.

Following a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law regarding all issues presented. Supreme Court Rule 183(j) (2015 Kan. Ct. R. Annot. 271). An appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and sufficiently support the district court's conclusions of law. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). The district court's ultimate conclusions of law, however, are reviewed de novo. 297 Kan. at 669.

Pursuant to the two-pronged test articulated by the United States Supreme Court in *Strickland,* 466 U.S. at 687-88, to succeed on a claim of ineffective assistance of counsel, a defendant must show first that counsel's performance was deficient and, second, that counsel's deficient performance sufficiently prejudiced the defendant as to deprive him of a fair trial. *Edgar v. State*, 294 Kan. 828, 837, 283 P.3d 152 (2012). The first prong of the *Strickland* test requires a showing that counsel's representation fell below an objective

5

standard of reasonableness; but there is a strong presumption that counsel's performance did in fact fall within the wide range of reasonable professional conduct. 294 Kan. at 838.

Although the right to make key decisions such as what plea to enter, whether to waive a jury trial, or whether to testify belong to the defendant, strategic and tactical decisions are within the exclusive province of defense counsel. *Flynn v. State*, 281 Kan. 1154, 1163, 136 P.3d 909 (2006). "'[S]trategic decisions made by trial counsel based on a thorough investigation are virtually unchallengeable.'" *Fuller v. State*, 303 Kan. 478, 488, 363 P.3d 373 (2015). The decision whether to call a particular witness is a matter of trial strategy so long as counsel conducted some investigation and had enough information upon which to base that decision. *Winter v. State*, 210 Kan. 597, Syl. ¶ 2, 502 P.2d 733 (1972); *State v. Lewis*, 33 Kan. App. 2d 634, 645, 111 P.3d 636 (2003). "Even though experienced attorneys may disagree on the best tactics or strategy, deliberate decisions based on strategy may not establish ineffective assistance of counsel." *Flynn*, 281 Kan. at 1165.

If a defendant successfully establishes that counsel's performance was deficient under the first prong of the *Strickland* test, the defendant also must show that he or she was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687; *Edgar*, 294 Kan. at 837. "To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Cheatham*, 296 Kan. 417, 431, 292 P.3d 318 (2013).

Here, at the evidentiary hearing, the district court ultimately found that Barnes did not meet the first prong of *Strickland* because White's performance was not deficient. In reaching this conclusion, the district court found that White's decision to stipulate to Wisner's report rather than to call him as a witness was a legitimate trial strategy:

6

"Expert reports are prepared so that everybody knows before trial what that person, that expert, is going to testify to. Nobody is surprised. We all have a copy of the report and we know what this expert is going to come in and testify to.

"If an expert comes in and wants to testify to things outside of that report, then that would put the other side . . . that puts them at a disadvantage because they were of the understanding that everything they were going to testify to is in that written report. That's why we have those expert reports, so that everybody know[s] what [is] going to be said and everybody knows what that expert's opinion is going to be.

"Well, Mr. White here just thought, look, I will give it a shot. I will ask the prosecutors if they will agree just to introduce this report without the doctor having to come in and testify to it. That way if I get the report in, I get everything in the report. Everything in the report is admitted. It's now part of the record. It's now part of the evidence. . . .

"In addition to that stipulation, the prosecution or the State doesn't get to contradict or question the doctor's reasons for that conclusion or his findings and his conclusions like they did here today. It just comes in without being controverted, without it being disagreed with. And that was a strategic decision on Mr. White's part."

The district court's finding that White's decision to stipulate to the contents of Wisner's report was a legitimate trial strategy is supported by substantial competent evidence. At the evidentiary hearing, White testified about the reasoning behind his decision not to call Wisner. He first explained that he was very pleased with the report he received from Wisner regarding Barnes' mental state:

"So when Wisner conducted his evaluation and sent the report, frankly, I was very happy to see what his conclusions were because at the time given the state of the mental disease and defect statute in Kansas, it's extremely difficult to present that type of defense and, of course, as you know, the language used in the evaluation, I could not have hoped for a better evaluation. That was my opinion. And I discussed it with Wisner afterwards and he was of the same opinion. Something to the effect of, you know, I have never really seen anything like this. If there's ever a case that would call for something like this, it would be this case. And so that is what he put in his report."

White further testified that all the evidence needed to support the mental disease or defect defense was contained in the report, which was now uncontested evidence and was preserved for appeal. This was a beneficial strategy, White explained, because the State previously had indicated that it was going to contest Wisner's basis for his opinion and that it had enough evidence to show premeditation. Finally, White testified that when he informed Wisner that the parties were going to stipulate to his report, Wisner did not indicate that any additional information was necessary to present the defense beyond what was contained in the report.

Wisner testified at the hearing and took issue with White's decision not to call him as a witness at the trial. Wisner testified that had he been called as a witness at the trial, he would have discussed his opinions about Barnes' mental health, but "with considerably more detail," and he could have explained the terms of art in his report. Wisner also stated that had he testified, he would have addressed the district court's conclusion that Barnes did not seem to be mentally disturbed at the time of the incident and explained that this trait is not dispositive of whether an individual is suffering from psychotic delusions. However, Wisner did not provide any clear answer regarding exactly what additional information he would have provided had he been called as a witness at trial.

Barnes acknowledges that defense counsel is responsible for making tactical and strategic trial decisions, including whether certain witnesses should testify; he claims, however, that White's performance was deficient because he did not consult Barnes before making the tactical choice to stipulate to the report. White refers to our Supreme Court's decision in *Winter*, quoting the ABA Standards for Criminal Justice Defense Function, § 5.2(b), that strategic and tactical decisions, such as what witnesses to call, are "'the exclusive province of the lawyer *after consultation with his client*.'" (Emphasis added.) 210 Kan. at 602.

8

Here, Barnes' testimony indicates that White did explain to him that White was not going to call Wisner and instead he would admit Wisner's report into evidence:

"Q. [DEFENSE COUNSEL:] Did [White] discuss calling Dr. Wisner as an actual, physical defense witness for your bench trial?

"A. I had asked him why and he said we don't need him right now because we are going to a bench trial. That's what he said.

"Q. Did he tell you about the stipulation to the report?

"A. No.

"Q. Did you know that Dr. Wisner's report was going to be admitted at the bench trial?

"A. Yes. I did know that."

White also testified at the evidentiary hearing that he discussed the decision with Barnes, though he could not remember exactly how Barnes responded:

"A. [WHITE:] And I do remember discussing with [Barnes] that the State agreed to [stipulate] to [the report], that there is no objection to it, and that it would come in unimpeached. In other words, whatever the report said would be the only evidence concerning that from an expert before the judge.

"Q. Do you remember what [Barnes], I guess, said in response to those discussions?

. . . .

"A. Well, I know that [Barnes] agreed that he would proceed in that way. Do I remember a specific answer to that? No, I don't. I couldn't tell you."

Finally, Barnes contends that even if the decision not to call Wisner to testify was exclusively within the province of trial counsel, White's decision to stipulate to the report lacked sufficient investigation to qualify as a strategic decision. This argument is refuted by the record. Prior to trial, Barnes was evaluated for competency and White was aware of Barnes' mental health issues. At trial, White called a representative from ComCare's crisis intervention hotline to testify about Barnes' bizarre and alarming calls to their crisis

9

line. White also called Barnes' former wife to testify about his mental health. When White retained Wisner to evaluate Barnes and prepare a report regarding his mental health, White provided Wisner with the following information:

> The Affidavit of Detective Rick L. Craig; The Competency Evaluation performed and reported by Constance Gaston, Ph.D. (ComCare); Police investigative reports (Wichita Police Department); Surveillance videotaped recording; Autopsy photographs; Audiotaped and transcribed interview/statement of Anthony R. Barnes; Audiotaped "911" Communications; Medical Records of Anthony R. Barnes identified as obtained through Social Security including inpatient hospitalizations 1990-2004; Psychiatric records, outpatient care at Wichita mental health facility, ComCare.

White was familiar with the contents of Wisner's report; he had discussed with Wisner that the report was extremely favorable and that he "could not have hoped for a better evaluation." Thus, the evidence showed that White had conducted a thorough review and investigation into Barnes' mental health status prior to deciding to ask the State to stipulate to the report. The decision not to call Wisner to testify was a tactical decision and did not stem from a failure to investigate.

In sum, there is substantial competent evidence in the record to support the district court's finding that White's performance was not deficient. White made a reasonable strategic decision, after consultation with Barnes, to introduce Wisner's written report by stipulation. White made his decision not to call Wisner after an adequate investigation revealed that the report contained everything needed to mount a mental disease or defect defense. Because the district court's finding that White's performance was not deficient is supported by substantial competent evidence, we do not need to reach the district court's additional finding that Barnes failed to establish that he was prejudiced by any alleged deficient performance. Thus, we conclude the district court did not err by denying Barnes' K.S.A. 60-1507 motion.

Affirmed.